IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FKF MADISON PARK GROUP OWNER, LLC, *et al.*,[1] | Chapter 11<br><br>Case No. 10-11867 (KG)<br><br>(Jointly Administered) |
| FKF MADISON PARK GROUP OWNER, LLC, JMJS 23rd STREET REALTY OWNER, LLC, MADISON PARK GROUP OWNER, LLC, SLAZER ENTERPRISES OWNER, LLC, SLAZER ENTERPRISES, LLC AND IRA SHAPIRO,<br><br>v.<br><br>GREEN BRIDGE CAPITAL S.A., SPECIAL SITUATION S.A., LEVEL ONE (US) PROPERTY LLC, CEVDET CANER AND YVES BAERT | Adv. Proc. No. 11-_____ (KG) |

## COMPLAINT AND OBJECTION TO CLAIMS

Plaintiffs, the Debtors and debtors in possession in the captioned bankruptcy cases (the "Debtors"), Slazer Enterprises, LLC ("SE LLC"), the sole member of the Debtor Slazer Enterprises Owner, LLC, and the Manager of each of the other Debtors, and Ira Shapiro ("Shapiro"), the Managing Member and sole voting Member of SE LLC and President and

---

[1] The Debtors in these cases, along with the last four digits of their EIN, are: FKF Madison Group Owner, LLC (Case No. 10-11867) (3699); JMJS 23rd Street Realty Owner, LLC (Case No. 10-11868) (6651); Madison Park Group Owner, LLC (Case No. 10-11869) (3701); and Slazer Enterprises Owner, LLC (Case No. 10-11870) (4339). The Debtors' address is 230 Congers Road, New City, NY 10920.

Secretary of each of the Debtors, as and for its Complaint and Objection to Claim against Green Bridge Capital S.A. ("Green Bridge"), Special Situation S.A. ("Special Situation"), Level One (US) Property LLC ("Level One"), Cevdet Caner ("Caner") and Yves Baert ("Baert" and, with the other defendants, the "Defendants"), by the Debtors and SE LLC's undersigned proposed counsel and by Shapiro pro se, allege as follows:

## PRELIMINARY STATEMENT

1.  Since September 2009, the Defendants have aided and abetted Marc Jacobs ("Jacobs"), the 50% member of SE LLC, in the breach of his fiduciary obligations to SE LLC and to the Debtors, in a periodic campaign to seize control of SE LLC in violation of the Amended and Restated Operating Agreement of Slazer Enterprises LLC dated October 2007 (a copy of which is attached as Exhibit A, the "Operating Agreement") and SE LLC's fiduciary obligations to the Debtors.

2.  The Defendants, in furtherance of their illegal scheme: (1) claim to have purchased an illegal irrevocable proxy from Jacobs to vote his membership interest in clear violation of the SE LLC Operating Agreement, (2) kept the illegal proxy secret from Shapiro, the Managing Member of SE LLC, from December 14, 2009 when it was obtained, and at which time crucial negotiations between Shapiro --- as Managing Member of SE LLC and President each of the Debtors --- and the Debtors' prepetition lender, iStar Tara, LLC ("iStar"), for the funding necessary to complete the Debtors' real estate project (the "One Madison Park Project") were ongoing and nearing their successful completion, (3) destroyed the Debtors' ability to obtain that financing in early January 2010, by meeting in secret with iStar and making false accusations against Shapiro, thus causing the commencement of foreclosure proceedings by iStar

against the Debtors' primary asset, the One Madison Park Project, (4) abandoned the Debtors and the project immediately thereafter, having determined there was nothing in it for themselves any longer, and leaving Shapiro to defend against the foreclosure and subsequent bankruptcy proceedings for the benefit of the Debtors' estates and creditors, (5) have improperly asserted that Green Bridge holds a 35% voting membership interest in SE LLC, though it holds at most only a non-voting economic interest in SE LLC, and (6) have sought --- in an effort to obtain an improper payment for themselves at the cost of the Debtors' estates and creditors --- to derail confirmation of a confirmable plan that provides for a significant distribution to creditors in these cases that was filed in December 2010.

3. In addition, the Defendants improperly obtained in October 2009 an avoidable $33 million secured claim by Level One against the Debtors, based on a "consolidation" of existing debt held by Level one against SE LLC (and not against any of the Debtors), for which the Debtors received no direct or indirect value or consideration.

**Procedural Background**

4. On June 8, 2010 (the "Petition Date"), involuntary chapter 7 petitions were filed in this Court against each of the Debtors by creditors Stephen Kraus, Mitchell Kraus, Barbara Kraus and Kraus Hi-Tech Home Automation, Inc. (the "Original Petitioning Creditors") thereby commencing against the Debtors involuntary chapter 7 cases (the "Chapter 7 Cases"). Various creditors subsequently joined in the involuntary petitions.[2] The Debtors filed a motion to dismiss the involuntary petitions (the "Dismissal Motion").

---

[2] These creditors are: Joe Coffey, Harvey Schiller, Pace Plumbing, Gotham Greenwich Construction, LLC and Mad 52, LLC (the "Joining Creditors" together with the Original Petitioning Creditors, the "Petitioning Creditors")

5. On November 18, 2010, the Petitioning Creditors filed a motion (the "Conversion Motion") seeking immediate entry of orders for relief followed by conversion of the Chapter 7 Cases to proceedings under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., (the "Bankruptcy Code").

6. On the same date, the Debtors filed concurrently their Withdrawal Of Opposition To Involuntary Petitions, Notice Of Non-Opposition To Entry Of Order For Relief, And Joinder In Motion To Convert To Cases To Chapter 11 Cases (the "Notice of Withdrawal"), stating that (i) they did not intend to file an answer or otherwise controvert the Petitions or the entry of orders for relief and (ii) they affirmatively joined in the Petitioning Creditors motion to convert the Chapter 7 Cases to chapter 11 cases (the "Chapter 11 Cases"), and on November 19, 2010, the Court entered orders for relief in the Chapter 7 Cases and entered orders converting the Chapter 7 Cases to Chapter 11 Cases (the "Conversion Date").

7. The Plan Support Agreement for the Debtors' plan was filed on the Conversion Date.

8. The Debtors filed their Plan (the "Plan") and Disclosure Statement, with One New Madison Park LLC, on December 15, 2010.

9. The Plan provides for a capital infusion that will result in the One Madison Park project being completed and the condominium units sold, with a significant distribution to creditors.

10. The Plan was obtained by Shapiro --- the Debtors' President and the Managing Member of SE LLC (which is the sole member or managing member of each of the Debtors) --- after months and thousands hours of hard work and for no pay.

11. On the same date on which the Debtors filed their Plan, December 15, 2010, Green Bridge and Special Situation filed their Adversary Proceeding (No. 10-56158) and their motion for a temporary restraining order and preliminary injunction seeking to enjoin Shapiro from acting for the Debtors.

12. On January 20, 2011, the Office of the United States Trustee appointed a committee of unsecured creditors in these cases (the "Committee").

13. Green Bridge's purported acquisition of a 35% membership interest in SE LLC was void at its inception, as was Special Situation's subsequent purported purchase of the voting rights of Jacobs, the other member of SE LLC.

14. Jacobs commenced his personal bankruptcy proceeding under Chapter 7 in the U.S. Bankruptcy Court for the Southern District of New York in October 2010.

15. Green Bridge, Special Situation and their directors and officers, Caner and Baert, have aided and abetted Jacobs and continue to aid and abet Jacobs in his breach of his fiduciary duties to SE LLC and to the Debtors.

16. Green Bridge, Special Situation and their directors and officers, Caner and Baert, with Jacobs destroyed the Debtors' ability to obtain financing from iStar leading to iStar's commencing foreclosure proceedings against the Debtors' primary asset, the One Madison Park Project.

17. Green Bridge, Special Situation and their directors and officers, Caner and Baert, to the extent that Green Bridge or Special Situation has any voting membership interest in SE LLC, have violated their own fiduciary duties to SE LLC and the Debtors by committing the acts set forth in this Complaint and to be evidenced at trial.

## JURISDICTION AND VENUE

18. The Court has jurisdiction over this action under 28 U.S.C. § 157(a) and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. § 1408 and 1409.

## PARTIES

19. Each of the Plaintiffs FKF Madison Group Owner, LLC, JMJS 23rd Street Realty Owner, LLC, Madison Park Group Owner, LLC, and Slazer Enterprises Owner, LLC, is a Delaware limited liability company having an address is P.O. Box 707, New City, New York 10956 and each is a Debtor in the captioned bankruptcy cases.

20. The Plaintiff SE LLC is a New York limited liability company having an address is P.O. Box 707, New City, New York 10956.

21. The Plaintiff Ira Shapiro is the President and Secretary of each of the Debtors and is the Managing Member and sole voting Member of SE LLC, and resides at One Appleton Road, New City, New York 10956.

22. The Defendant Green Bridge is a Marshall Islands corporation having an address at c/o ATTC S.A.M., 7 Avenue de Grand Bretagne, 98000 Monaco.

23. The Defendant Special Situation is a Marshall Islands corporation having an address at c/o ATTC S.A.M., 7 Avenue de Grand Bretagne, 98000 Monaco.

24. The Defendant Cedvet Caner, on information and belief, is a director and officer of Green Bridge and Special Situation, and has an address in Monaco.

25. The Defendant Yves Baert, on information and belief, is a director and officer of Green Bridge and Special Situation, and has an address in Monaco.

## STATEMENT OF FACTS

### Destruction of the iStar Financing Resulting in the
### Commencement of Foreclosure Proceedings by iStar

26.     The Defendants in late 2009 and early 2010 wrongfully took actions intended to destroy, and conspired with Jacobs to destroy, and did in fact destroy the Debtors' ability to obtain the iStar financing that the Debtors were negotiating and needed to obtain in order to complete and sell the One Madison Park Project, resulting in the commencement by iStar of foreclosure proceedings against the One Madison Park Project.

27.     The Defendants took these actions at a time when the Debtors were paying down the iStar loan, had paid $38 million to iStar from unit sale proceeds, and had numerous units under contract and scheduled to close imminently which would have resulted in further payments to iStar.

28.     Specifically, at a January 7, 2010 meeting with iStar attended by Jacobs and Shapiro in person, and by Caner by telephone ---- at which the iStar financing was to have been approved --- Jacobs, without his or Caner's disclosing the illegal and void proxy that Jacobs had "sold" to Special Situation, voted against the Debtors' taking the financing.

29.     Thereafter, on or about January 21, 2010, the Defendants Green Bridge, Special Situation and Caner met with iStar in secret, and without informing Shapiro (the Managing Member of SE LLC and the President of the Debtors) or any other representative of the Debtors. At that meeting the Defendants wrongfully represented to iStar that they had authority to act for SE LLC and the Debtors, and made numerous false accusations against Shapiro. Notably absent from the Defendants' presentation to iStar at that meeting was any

financing proposal to iStar whatsoever, notwithstanding iStar's apparent willingness to fund the Debtors' completion and sale of units of the One Madison Park Project.

30. Not surprisingly, shortly after the Defendants' unauthorized, secret meeting with iStar on or about January 21, 2010, iStar commenced a title bringdown in contemplation of foreclosure, and on February 18, 2010 commenced foreclosure proceedings against the Debtors' One Madison Park Project.

**Defendants' Continuing Efforts to Use the Debtors and Their Property for the Defendants' Improper Benefit, and to the Detriment of the Debtors, their Estates and Creditors**

31. The Defendants have continued to wrongfully claim and assert, and to conspire with Jacobs to wrongfully claim and assert, that they control the majority of the Members' votes in SE LLC, in an effort to use these bankruptcy proceedings to obtain an improper distribution for themselves, to the detriment of the Debtors and their estates and creditors. In so doing the Defendants have wrongfully sought to undermine, and have conspired with Jacobs to destroy, the Debtors' ability to obtain confirmation of a plan that will benefit the Debtors' estates and creditors.

32. In so doing, the Defendants wrongfully assert (1) that the Defendant Green Bridge was admitted as a member of SE LLC on or about September 16, 2009 (the "Purported Green Bridge Assignment"), notwithstanding that any such admission was in clear violation of SE LLC's Operating Agreement and null and void, and (2) that the Defendant Special Situation obtained an irrevocable proxy from Jacobs to Special Situation on or about December 14, 2009 and amended March 24, 2010 (the "Purported Special Situation Proxy"), notwithstanding that the sale of voting rights also was in clear violation of SE LLC's Operating Agreement and null and

void.

33. Neither the Purported Green Bridge Assignment nor the Purported Special Situation Proxy, nor any other documents or facts, give the Defendants any right, power or authority to vote any of the interests of the Members of SE LLC.

**The Purported Admission of Green Bridge as a Member of SE LLC Was Void Ab Initio.**

34. The sole Members of SE LLC under the Operating Agreement were Shapiro and Jacobs. Operating Agreement, Article I (definition of "Member") and Exhibit A (listing Shapiro and Jacobs, each with a 50% Percentage).

35. Members are prohibited from voluntarily transferring "all, or any portion of, or any interest or rights in, the Membership Interest owned by the Member," and any voluntary transfer is "invalid, null and void, and of no force or effect." Operating Agreement, §6.1.

36. The unanimous 100% affirmative vote of the Members is required to amend the SE LLC Operating Agreement. Operating Agreement, §5.2.2(5).

37. The sole exception to this unanimity requirement regards Level One US Properties LLC (defined in the Operating Agreement as "Level One"), and it allows SE LLC to enter into and ratify actions taken in carrying out "the transaction contemplated by that certain Agreement with Level One dated October 20, 2006, as amended November 6, 2006 (collectively, the "Level One Agreement"), including, but not limited to, the grant to Level One under the Level One Agreement of an option to purchase 35% of the Membership Interests in the Company for One Dollar." Operating Agreement, §5.2.2.

38. Under the October 20, 2006 Level One Agreement as so amended (attached as Exhibit B), SE LLC (defined in the preamble of that agreement as the "Company") granted to Level One (defined in the preamble of that agreement as the "Investor") the "exclusive option exercisable by notice to the Company...to purchase 35% of the membership interests in the Company for $1.00, subject to the prior pledges of the Lender, if applicable (the 'Purchase Option')." Level One Agreement, §1.2.4.

39. The October 20, 2006 Level One Agreement expressly provides that the "Investor may not assign Investor's rights or delegate Investor's duties under this Agreement to any entity or person," expressly prohibiting the assignment by Level One of the Purchase Option. Level One Agreement, §4.16.

40. The November 6, 2006 Level One amendment (attached as part of Exhibit B) referred to in the SE LLC Operating Agreement does nothing to change this. Though the November 6, 2006 amendment changes the timing for the exercise of the Level One Purchase Option, it does not alter the prohibition against Level One's assigning the Purchase Option, and, indeed, expressly provides that "[e]xcept as expressly provided" in the November 6, 2006 amendment, "all of the terms, conditions and agreements contained in the [October 20, 2006] Agreement shall remain unchanged." November 6, 2006 Level One Amendment, §§ 5 and 10.

41. The SE LLC Operating Agreement was never amended to permit the admission of any new Member other than Level One pursuant to the non-assignable Purchase Option, as set forth in the Operating Agreement, §5.2.2.[3]

---

[3] Moreover, the Purchase Option arguably is nothing more than a disguised security interest for only an economic interest --- and not a true membership interest --- in SE LLC. Section 1.2.4(ii) of the October 20, 2006 Level One Agreement provides that, if the "option" is exercised and Level One receives the return of its $15,000,000 investment, plus $14,000,000 of profit, then the membership interests revert back to Shapiro and Jacobs.

42. The September 16, 2009 Purported Green Bridge Assignment documents (attached as Exhibit C) did not effectuate an amendment to the SE LLC Operating Agreement that permitted or would permit the admission of Green Bridge as a member. An amendment to the operating agreement, as noted above, required and requires the unanimous (100%) affirmative vote and approval of the then Members of SE LLC. Jacobs, the other Member of SE LLC never signed any of the September 16, 2009 Purported Green Bridge Assignment documents, no meeting of SE LLC was held, and no vote was taken.

43. The purported admission of Green Bridge as a Member of SE LLC was invalid, null and void *ab initio*, and of no force or effect. Operating Agreement, §6.1.[4]

### The Purported Transfer by Jacobs of His Voting Rights to Special Situation was Void *Ab Initio*.

44. The Defendants further assert that they purchased a proxy to vote Jacobs' Membership Interest by an Agreement with Jacobs dated on or about December 14, 2009 (attached as Exhibit D), which was amended by a second, Amended and Restated Agreement with Jacobs dated on or about March 24, 2010 (attached as Exhibit E).

45. The purchase price payable to Jacobs under the December 14, 2009 Agreement was eight (8) monthly installments of $15,000 each, for a total of $120,000 (December 14, 2009 Agreement ¶2). Jacobs apparently has been paid about $77,000 for the proxy.

46. The Agreement was entered into shortly after Jacobs tried unsuccessfully

---

[4] The Defendants may argue that Green Bridge had apparent authority to act as a Member and held itself out as such. The Plaintiffs submit that no such agency or other doctrine can be utilized for the creation of a membership interest in a limited liability company.

to sell his Membership Interest in SE LLC to Harrison Wills in the Fall of 2009. Jacobs was unable to sell his interest apparently because he insisted on an indemnification from Mr. Wills covering, among other things, Jacobs' guaranty of the iStar loan and all of the tens of milllions of dollars in personal notes that Jacobs and in some cases his wife had guarantied.

47. The March 24, 2010 Amended and Restated Agreement purported to make the proxy "absolute and irrevocable" with Jacobs having "no right to terminate or revoke the same." March 24, 2010 Amended and Restated Agreement, ¶2.

48. Jacobs never informed Shapiro, the Debtors or their Members, either orally or in writing, of the purported sale of his vote in SE LLC.

49. The term "Membership Interest" is defined broadly in the Operating Agreement and expressly includes "the right to participate in the management of and vote on matters coming before the Company." Operating Agreement, Art. I (definition of "Member").

50. Section 6.1 of the SE LLC Operating Agreement expressly prohibits the voluntary transfer "of all, or any portion of, or any Interest or rights in, the Membership Interest owned by the Member," which by the definition of "Membership Interest" expressly includes the right to participate in management of and vote on matters coming before the Company." Operating Agreement, §6.1.

51. Jacobs' secret, purported sale of the proxy to Special Situation constituted a clear breach of his duties of care and loyalty as a Member of SE LLC as well as to each of the Debtors, given SE LLC's role in the management of the Debtors under their respective operating agreements. The breach was especially damaging to the Debtors when Jacobs spoke at the January 7-8, 2010 Meeting regarding the financing from iStar, the rejection of which financing

by iStar after that meeting led directly and unavoidably to the commencement of the foreclosure proceeding.

52. The purported voluntary transfer by Jacobs of his voting interest could only be accomplished by an amendment to the SE LLC Operating Agreement that would permit the admission of Special Situation as a member. Such an amendment, as noted, requires the unanimous (100%), affirmative vote and approval of the Members. No meeting of SE LLC was held, no vote was taken, and the Operating Agreement was never amended.

53. The purported grant of the proxy by Jacobs to Special Situation was invalid, null and void *ab initio*, and of no force or effect. Operating Agreement, §6.1.

### The Purported Green Bridge Assignment and the Purported Special Situation Proxy Granted by Jacobs Were Also Barred Under the Operating Agreement of the Debtor, Slazer Enterprises Owner, LLC.

54. The Debtor Slazer Enterprises Owner LLC is one of the Debtors, and owns a 78% tenancy-in-common interest in the One Madison Park Project. The sole equity Member of Slazer Owner is SE LLC. The Amended and Restated Limited Liability Company Agreement of Slazer Owner (the "Slazer Owner Operating Agreement," attached as Exhibit E, prohibits any change of control in the ownership of SE LLC. If effective, the Purported Green Bridge Assignment and the Purported Special Situation Proxy would cause a change in control that is barred by the SE LLC Operating Agreement.

55. Section 23(b) of the Slazer Owner Operating Agreement states:
To the fullest extent permitted by law, no transfer of any indirect ownership interest in the Company may be made such that the transferee owns, in the aggregate with the ownership interests of its affiliates and family members, more than a 49% indirect interest in the Company . . . unless (1) an acceptable nonconsolidation opinion is delivered to the holder of the Loan and (2) the Lender consents in writing or, after securitization of the Loan, the Lender receives

confirmation that the Rating Agencies have issued a Rating Agency Confirmation. Operating Agreement, §23(b).

56. Green Bridge and Special Situation are affiliates and contend they own or control more than 49% of the indirect interests in Slazer Owner. As such, they have violated § 23(b), and initially did so in secret by acquiring a purported voting interest.

### All Voting Rights Relating to Jacobs' Membership Interests Ceased to Exist on Jacobs' Commencement of His Personal Bankruptcy Case.

57. Jacobs filed a voluntary chapter 7 bankruptcy case in the U.S. Bankruptcy Court for the Southern District of New York on October 27, 2010.

58. Section 6.3 of the SE LLC Operating Agreement explains the consequence of an Involuntary Withdrawal on a Membership Interest:
> Immediately upon the occurrence of an Involuntary Withdrawal, the successor of the Withdrawn Member shall thereupon become an Economic Interest Holder, but shall not become a Member. Operating Agreement, §6.3.

59. Jacobs' bankruptcy filing triggered an Involuntary Withdrawal, and the chapter 7 trustee of his estates became an Economic Interest Holder,[5] but both the trustee and any transferee of the Economic Interest is prohibited by the Operating Agreement from participating in management or voting in SE LLC. Operating Agreement §6.3.

### FIRST CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty)

60. Plaintiffs repeat and reallege the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

---

[5] Under the Slazer Enterprises LLC Operating Agreement, an "Economic Interest Holder" "means any Person who holds an Economic Interest, whether as a Member or an unadmitted assignee of a Member." An "Economic Interest" is defined under the Slazer Enterprises LLC Operating Agreement as "a Person's share of the Profits and Losses of, and the right to receive distributions from, the Company." Operating Agreement, Art. I (definitions of "Economic Interest Holder" and "Economic Interest."

61. The Defendants and their officers' and directors' actions in conspiracy with Marc Jacobs to use the secret and ineffective proxy "sold" to Special Situation by Jacobs, the false accusations against Shapiro, and the ineffective interest of Green Bridge in SE LLC, and to destroy the iStar financing in January 2010, proximately caused the commencement by iStar of foreclosure proceedings against the One Madison Park Project.

62. At all relevant times, the Defendants were aware that Jacobs had a fiduciary duty to SE LLC and to the Debtors, that Jacobs' voting rights were not transferable, that Shapiro was the Managing Member of SE LLC, that the accusations that they made against Shapiro were false, that the Level One option to purchase a membership interest in SE LLC was not assignable, and that the SE LLC Operating Agreement had not been amended to admit Green Bridge or to give Green Bridge or Special Situation any voting rights in SE LLC.

63. Notwithstanding this knowledge, the Defendants directed, encouraged, assisted, facilitated and/or participated with Jacobs in his breaching his fiduciary duties to SE LLC and the Debtors at a critical time in the Debtors' affairs, by voting against the iStar financing, and thus proximately causing the commencement of foreclosure proceedings against the Debtors in February 2010.

64. The Defendants' continuing wrongful in this regard have jeopardized the Debtors' ability to confirm a plan in the interests of their estates and creditors.

65. The Defendants' aiding and abetting Jacobs' breach of his fiduciary duties to SE LLC and the Debtors directly and proximately harmed and continue to proximately harm SE LLC and the Debtors, by among other injuries, diminishing the Debtor's estate, reducing the Debtor's ability to conduct its business and increasing the likelihood that the Debtor's creditors

would not be paid.

66. Accordingly, Plaintiffs are entitled to a monetary judgment against the Defendants in an amount to be determined at trial, plus interest.

## SECOND CLAIM FOR RELIEF
(Breach of Fiduciary Duty)

67. Plaintiffs repeat and reallege the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

68. The Defendants and their officers' and directors' use of the secret and ineffective proxy "purchased" by Special Situation from Jacobs, and the false accusations against Shapiro, to destroy the iStar financing in January 2010, breached their fiduciary obligations to SE LLC and the Debtors even if it is determined that Green Bridge was a member of SE LLC, by proximately causing the commencement by iStar of foreclosure proceedings against the One Madison Park Project.

## THIRD CLAIM FOR RELIEF
(Avoidance of Liens and Fraudulently Incurred Obligations
11 U.S.C. §§544(b) and 550; Uniform Fraudulent Transfer Act)

69. The Plaintiffs repeat and reallege the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

70. The Debtor did not receive reasonably equivalent value or fair consideration in exchange for the $33 million notes and mortgages that were made to Level One.

71. All of the proceeds of the loan advanced by Level One --- approximately $24 million --- were made to SE LLC, and not to the Debtors.

72. No funds were advanced to the Debtors at any time by Level One, no

funds were advanced by Level One to either SE LLC or to any of the Debtors at the time of the October 20, 2009 "consolidation" of the Level One loan to SE LLC.

73. At all relevant times, the Debtors had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code.

74. The purported claims and liens of Level One against the Debtors and their assets should be avoided pursuant to applicable provisions of the Uniform Fraudulent Transfer Act and sections 544(b) and 550 of the Bankruptcy Code.

75. Pursuant to sections 544(b) and 550 of the Bankruptcy Code and the Uniform Fraudulent Transfer Act, such transfers, conveyances and incurrences of obligations are voidable.

76. Accordingly, Plaintiffs are entitled to void such transfers and incurrences of obligations.

## FOURTH CLAIM FOR RELIEF
**(Equitable Subordination and Subordination - 11 U.S.C. §510)**

77. Plaintiffs repeat and reallege the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

78. As set forth above, the Defendants' wrongful and improper conduct injured the Debtors' creditors and/or conferred an unfair advantage on the Defendants.

79. Consistent with section 510(c) of the Bankruptcy Code, the Defendants' Claims should be equitably subordinated to other claims against the Debtors.

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. On the First Claim for Relief, for compensatory damages in an amount to be determined at trial, plus interest.

2. On the Second Claim for Relief, for compensatory damages in an amount to be determined at trial, plus interest.

3. On the Third Claim for Relief, for a determination that the transfers made and the obligations incurred by the Debtors with respect to the October 20, 2009 mortgage notes and mortgages to Level One are avoidable, and the avoidance of obligations incurred.

4. On the Fourth Claim for Relief, for equitable subordination and subordination of the Defendants' claims below the level of claims of general unsecured creditors of the Debtors.

5. Such other and further relief as is just and proper.

Dated: January 24, 2011      PACHULSKI STANG ZIEHL & JONES LLP

*/s/ B ?*

Richard Pachulski (CA Bar No. 90073)
Bruce Grohsgal (Bar No. 3583)
Jeffrey N. Dulberg (CA Bar No. 181200)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: rpachulski@pszjlaw.com
       bgrohsgal@pszjlaw.com
       jdulberg@pszjlaw.com

Proposed Counsel Debtors and to Slazer Enterprises LLC

*/s/*

Ira Shapiro, Pro Se